## Wood, et al. v. Nall.

(Decided October 8, 1914.)

### Appeal from McLean Circuit Court.

Logs and Logging—Sales of Standing Timber.—Reitz & Sons bought of Nall all standing timber larger than certain specified sizes, on a tract of land, and contracted with Bates and Wood therefor, the latter to cut and deliver the logs at stipulated prices, and the purchase price of the timber to be deducted from the proceeds of the logs. Bates and Wood claimed the right to remove certain standing timber and Nall refused to permit its removal, and they sued him for the value of the timber so sought to be removed. The jury found for defendant. Evidence examined and instructions found not prejudicial to plaintiff's substantial rights.

R. P. ROWE and LITTLE & SLACK for appellants.

JOE H. MILLER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Isaac T. Nall was the owner of a tract of land in Mc-Lean County, upon which there was some timber. A. M. Bates and J. W. Wood examined this timber with a view to its purchase. Not having the money with which to purchase it themselves, they informed W. A. Haney, an agent for Francis J. Reitz, trading under the name of John A. Reitz & Sons, a dealer in timber, that the Nall timber was for sale.

On August 13, 1909, Haney went to Nall's place accompanied by Bates and Wood, and bought from Nall all of the ash and oak which was seventy-two inches and

larger in circumference at the stump, and all the gum and maple which was eighty inches or larger in circumference at the stump, with two and one-half years' time in which to remove the timber, paying therefor three thousand dollars, and taking a deed conveying the timber to his principal, Reitz & Sons.

On August 14, 1909, Reitz & Sons entered into a contract with Bates and Wood, by the terms of which Bates and Wood were to cut and deliver to Reitz & Sons all the timber embraced in the contract between Nall and Reitz & Sons, at stipulated prices, the purchase price of the timber paid by Reitz & Sons to Nall, with interest thereon, to be deducted from the proceeds of the logs as delivered, the work to be completed in one year from the date of the contract.

Bates and Wood then proceded to cut and remove the timber. In order that no trees might be cut smaller than those sold by Nall, Bates and Wood and Nall measured up all the smaller trees determined by them as coming within the contract of sale, and all such trees were marked with paint.

Bates and Wood cut and removed timber from the Nall land during the remainder of 1909 and before August 14, 1910, ceased operations thereon.

In the latter part of December, 1911, they claimed the right to and demanded of Nall about one hundred small trees still standing on his land, none of which had been marked with paint, with the exception of some six or eight, which had been permitted to remain standing during the previous operations, because, as it seems from the evidence, they were not considered worth cutting. Nall refused to permit any more timber to be removed from his land; and on September 30, 1912, Bates and Wood sued him for the value of the standing timber sought by them to be removed, joining Reitz & Sons as parties plaintiff.

Nall claimed that all of the timber sold by him to Reitz & Sons had already been removed and he so testified. Haney, the agent for Reitz & Sons, testified that about August 14, 1910, the date fixed in the contract for the completion of the delivery by Bates and Wood of the Nall timber, that both Bates and Wood told him they had taken off of the Nall land all the trees it would pay to take off—that there might be a few remaining that

would come within the sizes purchased, but none that would pay the expense of removing.

Nall also claimed that Bates and Wood did not purchase the timber from Reitz & Sons, and Haney, Reitz's agent, who made the contract with Bates and Wood, so testified; and Reitz disclaimed ownership to any of the timber left on the land, admitting that he had received all the timber purchased by him from Nall, and on his motion the name of Reitz & Sons was stricken out as party plaintiff.

The writing between Reitz & Sons and Bates and Wood would justify the construction thereof as contended for by Bates and Wood, and the first instruction given by the court clearly placed this construction upon it, as the court instructed the jury in substance that if they believed from the evidence that any of the timber purchased by Reitz & Sons was still on the land on January 14, 1913, they should find for plaintiff; but if they believed that Reitz & Sons or Bates and Wood had removed from Nall's land all the timber sold by Nall to Reitz & Sons, before plaintiffs claimed the right to remove the trees in question, and that such trees were not embraced in the sale made to Reitz & Sons by Nall, they should find for defendant.

But the real issue submitted to the jury was whether all the timber purchased by Reitz & Sons from Nall had been removed; and the jury evidently believed that it had, and so found for the defendant.

Complaint is made of the instructions, which are lengthy and apparently cover every angle of the case. The objections urged appear to us to be extremely technical. Instruction No. 5 is especially complained of. It informed the jury that if Nall did not have notice that Bates and Wood had an interest in the sale of the timber made by him to Reitz & Sons, then he had a right to refuse to allow them to remove the timber in question. We cannot understand that this instruction was prejudicial to plaintiffs. Nall admitted that he had notice that Bates and Wood claimed an interest therein. His principal defense was that all the timber sold by him to Reitz & Sons had already been removed.

The whole case turns on conflicting evidence. The jury has chosen to accept defendant's theory of the case, and was doubtless influenced in a large measure by the considerable interval of time which elapsed between the

ceasing of the first timber cutting and the claim made in December, 1911, of the right to remove more timber from the lands of the defendant.

We are convinced that a fair trial has been accorded the parties.

Judgment affirmed.